# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

JUAN RAMON OCHOA,

    Petitioner,

v.

WARDEN T. JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:17-cv-31

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Juan Ramon Ochoa ("Ochoa"), who is currently housed at D. Ray James Correctional Institution ("D. Ray James") in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response. (Doc. 8.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS without prejudice** Ochoa's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Ochoa *in forma pauperis* status on appeal.

## BACKGROUND

Ochoa is currently serving a 168-month federal sentence for conspiracy to distribute cocaine, methamphetamine, and marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1). (Doc. 8-1, pp. 4–6.) He has a projected release date of October 14, 2017. (Id. at p. 5.)

Ochoa states that the Department of Homeland Security, Bureau of Immigration and Customs Enforcement ("ICE"), issued a detainer against him in June 2005, then again on July 27, 2010, and in December 2016. (Doc. 1-1, p. 2.) It is not clear from Ochoa's Petition what he requests the Court do in this case. However, it appears that Ochoa seeks to have the Court

remove the immigration detainer against him so that he may be eligible for halfway house placement. Respondent asserts that the Court should not review the relative merits of Ochoa's Petition because he has not exhausted his available administrative remedies. (Doc. 8.) Additionally, Respondent argues that the Court cannot grant Ochoa the relief he seeks.

**DISCUSSION**

**I.	Whether Ochoa Exhausted his Administrative Remedies**

**A.	Legal Requirements for Exhaustion**

The Eleventh Circuit Court of Appeals has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). However, the normal pleading rules still apply, and dismissal is appropriate when an affirmative defense appears on the face of a complaint—making it clear that a prisoner cannot state a claim for relief. Id. at 214–15. Thus, when a party admits in his complaint or petition that he has not exhausted the grievance process, dismissal is warranted. See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-

092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to [42 U.S.C.] § 1997e(a) if it is clear from the face of the complaint that the prisoner has not exhausted all administrative remedies available to him.").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[1]

The United States Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus

---

[1] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts

leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C. Analysis of Ochoa's Efforts at Exhaustion

In his Petition, Ochoa concedes that he did not pursue any administrative remedies before filing suit. (Doc. 1, p. 2.) Respondent asserts that Ochoa has never pursued any of the available administrative measures at any of the required levels. (Doc. 8-1, pp. 1–2, 8.) Ochoa has not provided any reply to this contention.

Inmates at D. Ray James must exhaust administrative remedies, beginning their grievance process locally with the Warden by using the contractor's grievance procedures. (Id. at p. 2.) This involves an attempt at informal resolution, which, if unsuccessful, is followed by filing a formal complaint with the Warden using a BP-9 form. (Id.) An inmate may appeal the Warden's response to the inmate's complaint by filing a BP-10 firm with the Regional Director. (Id.) If the Regional Director denies the appeal, the inmate may then file a final appeal with the Office of General Counsel in Washington, D.C. by submitting a BP-11 form. (Id.)

The evidence before the Court reveals that Ochoa did not submit any administrative remedy filings at all, much less filings related to the allegations raised in his Petition. (Id. at pp. 1–2, 8.) Additionally, based on Respondent's submissions, it appears that administrative

5

remedies are available to Ochoa, and Ochoa has raised no contentions to the contrary. Thus, under the second Turner step, the Court finds Respondent's account of Ochoa's exhaustion to be the more credible account.

Accordingly, the Court should **DISMISS** Ochoa's claims for failure to exhaust.

### III. Whether Ochoa is "in Custody" Pursuant to the ICE Detainer for Section 2241 Purposes

Additionally, because Ochoa is not in ICE's custody, he cannot challenge the propriety of his ICE detainer via a Section 2241 Petition. "A detainer serves to advise another law enforcement agency that the [Department of Homeland Security] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." 8 C.F.R. § 287.7(a). "The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible." Id.

The Eleventh Circuit has held that challenges to immigration detainers may only be brought under certain limited circumstances not present here. Orozco v. Immigration and Naturalization Servs., 911 F.2d 539, 541 (11th Cir. 1990).[2] However, the Eleventh Circuit has also held that the filing of a detainer, standing alone, does not cause a prisoner to come within the custody of DHS or ICE. Oguejiofor v. Att'y Gen. of the U.S., 277 F.3d 1305, 1308 n.2 (11th Cir. 2002); Orozco, 911 F.2d at 541. This position is in accord with several other Courts of Appeals. See, e.g., Zolicoffer v. U.S. Dep't of Justice, 315 F.3d 538, 539 (5th Cir. 2003); Garcia

---

[2] Since Orozco, the Eleventh Circuit has held that challenges to removal proceedings cannot be brought under Section 2241. Themeus v. U.S. Dep't of Justice, 643 F. App'x 830, 832 (11th Cir. 2016) ("Following enactment of the REAL ID Act of 2005, district courts lack habeas jurisdiction to entertain challenges to final orders of removal.").

v. Taylor, 40 F.3d 299, 303–04 (9th Cir. 1994); Santana v. Chandler, 961 F.2d 514, 516 (5th Cir. 1992); Prieto v. Gulch, 913 F.2d 1159, 1162 (6th Cir. 1990); Mohammed v. Sullivan, 866 F.2d 258, 260 (8th Cir. 1989). "The underlying rationale of these courts is that a detainer, as distinguished from other [ICE] orders, does not put a 'hold' on" the individual. Ryan v. Dep't of Homeland Sec., No. 3:09cv399/LAC/MD, 2010 WL 1433166, at *1 (N.D. Fla. Mar. 8, 2010); accord Galaviz-Medina v. Wooten, 27 F.3d 487, 493 (10th Cir. 1994) (noting that the lodging of a detainer, without more, is insufficient to render the alien "in custody").

Generally, a detainer is viewed as "an informal process advising prison officials that a prisoner is wanted on other pending charges and requesting notification prior to the prisoner's release." Id. (internal citation omitted). "In the immigration context, a detainer usually serves only as a notice to prison authorities that . . . ICE is going to be making a decision about the deportability of the alien in the future." Id. (citing Campillo v. Sullivan, 853 F.2d 593, 595 (8th Cir. 1988)). "The reasoning follows that the detainer does not serve to establish conclusively either present or future restraints on the prisoner's liberty." Id. "Because there is no actual claim to the individual following the completion of his criminal sentence, there is no custody." Id.

Thus, Ochoa is not "in custody" of ICE for purposes of Section 2241 simply because ICE lodged a detainer against him. Furthermore, Ochoa does not contend that ICE served him with an order to show cause or a final deportation order or that there was some other reason he should be considered in the custody of ICE. See Alanis-Bustamonte v. Reno, 201 F.3d 1303, 1309 (11th Cir. 2000) (a show cause order, in combination with a warrant on a detainer, are prerequisites to formal commencement of removal proceedings). Because Ochoa is not "in custody" of ICE at this time, this Court lacks subject matter jurisdiction under 28 U.S.C. § 2241 to address his claim.

Accordingly, this provides additional, independent grounds for the Court to **DISMISS** Ochoa's Petition.[3]

## II. Leave to Appeal *in Forma Pauperis*

The Court should also deny Ochoa leave to appeal *in forma pauperis*. Though Ochoa has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[3] Respondent also contends that, to the extent Ochoa seeks placement in a halfway house, the Court cannot grant him that relief. (Doc. 8, pp. 3–5.) Respondent explains that an inmate has no right to be in any particular institution, and BOP's discretionary placement decisions are not subject to judicial review. However, while Ochoa's Petition is difficult to follow, it does not appear that he directly requests placement in a halfway house. Rather, it appears he is asking the Court to remove the detainer against him so that he may then be eligible for halfway house placement. Regardless, if Ochoa does request placement in a halfway house, the Court cannot grant him that relief for the reasons stated in Respondent's brief and Ochoa's failure to exhaust his administrative remedies. (Id.)

Given the above analysis of Ochoa's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Ochoa *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS without prejudice** Ochoa's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Ochoa leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.  The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Ochoa and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 20th day of September, 2017.

_____
R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA